1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KECHARA HOUSE BUDDHIST
ASSOCIATION MALAYSIA,

          Plaintiff,

    v.

JOHN DOES 1-3,

          Defendant.

Case No.  15-cv-00332-DMR

**ORDER DENYING EX PARTE
APPLICATION FOR LEAVE TO TAKE
EARLY DISCOVERY**

Plaintiff Kechara House Buddhist Association Malaysia ("Kechara House") filed an amended complaint against five Doe Defendants, seeking relief for disparaging statements about Kechara House made online by anonymous speakers.  Plaintiff now moves *ex parte* for leave to take discovery prior to the Rule 26 conference so that it may unearth the identity of the five unnamed defendants in this action.  [Docket No. 21.]  This matter is appropriate for determination without oral argument pursuant to Civil Local Rule 7-1(b).  For the following reasons, Plaintiff's application is denied.

## I. Background

Plaintiff Kechara House is a non-profit Buddhist association headquartered in Malaysia, and is engaged in spiritual, teaching, and charitable activities.  (Am. Compl. ¶ 2.)  On January 23, 2015, Plaintiff filed a complaint against three Doe Defendants, bringing claims for defamation, invasion of privacy, and copyright infringement.  Plaintiff asserted that the Doe Defendants had conducted an "online smear campaign" by posting libelous videos on YouTube and Google+ that contained defamatory statements about Kechara House and its officials.  (Compl. ¶¶ 1, 9-11, 13.)

After filing suit, Plaintiff submitted an *ex parte* application for leave to take early discovery aimed at identifying the Doe Defendants.  Plaintiff sought permission to serve a subpoena on third party Automattic, Inc., dba WordPress.com ("WordPress") to ascertain the

identity of the person responsible for all posts on a blog at http://insidethecompany.wordpress.com ("*Inside the Company*"), and other related information.  [Docket No. 10.]  On May 19, 2015, the court denied the application on the grounds that Plaintiff had failed to establish good cause to permit the requested discovery.  *Kechara House Buddhist Ass'n Malaysia v. Does 1-3*, No. 15-cv-00332-DMR, 2015 WL 2399006, at *3-4 (N.D. Cal. May 19, 2015).  The court found, *inter alia*, that Plaintiff had not sufficiently established a connection between the individual(s) responsible for the postings on *Inside the Company* and any of the three Doe Defendants.  The court noted that the complaint did not directly attribute any postings on *Inside the Company* to Doe Defendants 1-3.  *Id*.  Therefore, the court concluded that Plaintiff had not shown a reasonable likelihood that the requested discovery would lead to the identification of the Doe Defendants.  *Id*. (citing *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 580 (N.D. Cal. 1999)).

Plaintiff filed an amended complaint on June 16, 2015.  [Docket No. 18.]  It asserts three claims against five Doe Defendants: 1) defamation; 2) conspiracy; and 3) declaratory and/or injunctive relief.  Plaintiff again alleges that Defendants have engaged in an online campaign, in which they used various aliases to publish "libelous material containing defamatory statements" about Kechara House and its officials.  (Am. Compl. ¶¶ 1, 15.)  However, Plaintiff's amended complaint challenges different material.  Plaintiff no longer refers to "libelous" videos on YouTube and Google+; it now alleges that Defendants have posted defamatory statements on three blogs hosted on WordPress: "*Inside the Company*," "*Delightful Satire*," and "*Goodbye Shugden*."  (Am. Compl. ¶¶ 4, 16, 18-21.)

Plaintiff alleges that *Inside the Company* is "a set of false and spurious statements designed to defame Kechara House;" it falsely "mischaracterizes a non-profit religious organization as a cult" and "associates Kechara House with hate groups."  (Am. Compl. ¶ 16.)  According to Plaintiff, *Inside the Company* also falsely seeks to portray Tsem Rinpoche, Kechara House's spiritual leader, as "a criminal, con-man, and violent person."  (Am. Compl. ¶ 20.)  Plaintiff alleges that *Delightful Satire* "employs cartoon-like pictures of Tsem Rinpoche" that depict him as "a criminal and con-man spouting hate speech and profanity."  (Am. Compl. ¶ 18.)  According to Plaintiff, the authors responsible for the content on *Delightful Satire* "know that Tsem Rinpoche is

not a criminal" and "know that Kechara House do not [sic] use hate speech." (Am. Compl. ¶ 18.) Plaintiff further alleges that *Goodbye Shugden* describes Kechara House as a cult, "falsely characterizes" Kechara House as "an abusive and sadistic organization," and portrays Tsem Rinpoche as "a criminal, con-man, and violent person." (Am. Compl. ¶¶ 19, 20.)

Plaintiff alleges upon information and belief that Defendant Doe 1 is the author or co-author of all three blogs, noting similarities between them. (Am. Compl. ¶¶ 4, 20, 21.) Plaintiff alleges upon information and belief that Defendant Does 2 and 3 are suspected co-conspirators of Doe 1, and that Does 3, 4, and 5 are co-authors with Doe 1 of allegedly defamatory content on *Inside the Company* and *Goodbye Shugden*. (Am. Compl. ¶¶ 5-7.) Plaintiff further alleges that Doe 2 "is believed to operate a corporate presence in California," and that Doe 3 "is believed to be the Chief Executive Officer of Doe 2, and is also believed to . . . own property in this District from which the alleged conduct was believed to have been made." (Am. Compl. ¶ 10.) Additionally, Plaintiff alleges that Doe 3, acting as Doe 2's agent, assisted Doe 1 in the defamation of Kechara House by directing an unknown number of persons to *Inside the Company*. Doe 3 also contacted Doe 2's "supporters" in an email, directing them to *Inside the Company* and writing that "Kechara House was 'torturing' its members, that Kechara House's spiritual leader was a 'monster master' and a 'con-man', and made derogatory statements about other agents of Kechara House." (Am. Compl. ¶ 24.) According to Plaintiff, Doe 3's statements defamed Plaintiff and were made with the intent to further Doe 3's conspiracy with Doe 1. (Am. Compl. ¶ 24.)

Plaintiff did not attach any of the allegedly defamatory materials to the complaint, the amended complaint, or the motion for early discovery.

Plaintiff now moves *ex parte* for leave to serve a subpoena on WordPress for documents and information identifying the person(s) responsible for nine individual posts on the three blogs.[1] (Gomez Decl. June 23, 2015, Ex. A (Proposed Subpoena).)

## II. Legal Standard

The Ninth Circuit disfavors exceptions to the general rules of discovery. *Columbia Ins.*

---

[1] The nine posts consist of two posts on *Inside the Company*, six posts on *Goodbye Shugden*, and one post on *Delightful Satire*.

1   *Co.*, 185 F.R.D. at 577 (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  Generally,

2   "discovery proceedings take place only after the defendant has been served," *Columbia Ins. Co*,

3   185 F.R.D. at 577, and after parties have held the discovery conference required by Federal Rule

4   of Civil Procedure 26(f).  Fed. R. Civ. P. 26(d)(1).  Exceptions to this rule are rare, *see Columbia*

5   *Ins. Co.*, 185 F.R.D. at 577, but Rule 26(d)(1) gives courts discretion to allow early discovery.

6   Fed. R. Civ. P. 26(d)(1).  In determining whether to allow early discovery, "the court's primary

7   responsibility . . . is to strike an appropriate balance between competing interests and public

8   policies."  *Highfields Capital Mgmt., L.P. v. Doe*, 385 F. Supp. 2d 969, 974 (N.D. Cal. 2005).

### III. Discussion

**A.**     **Applicable Test for Early Discovery**

11          It is well-settled that "an author's decision to remain anonymous, like other decisions

12   concerning omissions or additions to the content of a publication, is an aspect of the freedom of

13   speech protected by the First Amendment."  *In re Anonymous Online Speakers*, 661 F.3d 1168,

14   1173 (9th Cir. 2011) (quoting *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995)).

15   "As with other forms of expression, the ability to speak anonymously on the Internet promotes the

16   robust exchange of ideas and allows individuals to express themselves freely without 'fear of

17   economic or official retaliation . . . [or] concern about social ostracism."  *In re Anonymous*, 661

18   F.3d at 1173 (quoting *McIntyre*, 514 U.S. at 341-42).  However, the "right to anonymity is not

19   absolute."  *Art of Living Found. v. Does 1-10*, No. 10-CV-05022-LHK, 2011 WL 5444622, at *4

20   (N.D. Cal. Nov. 9, 2011).  "Where anonymous speech is alleged to be unlawful, the speakers'

21   right may give way to a plaintiff's need to discover the speaker's identity in order to pursue its

22   claim."  *Id*.  In evaluating a request for early discovery, a court must balance "the need to provide

23   injured parties with [a] forum in which they may seek redress for grievances . . . against the

24   legitimate and valuable right to participate in online forums anonymously or pseudonymously."

25   *Columbia Ins. Co.*, 185 F.R.D. at 578 (the "ability to speak one's mind without the burden of the

26   other party knowing all the facts about one's identity can foster open communication and robust

27   debate.").

28          Courts have adopted "a variety of standards to benchmark whether an anonymous

4

United States District Court
Northern District of California

speaker's identity should be revealed." *In re Anonymous Online Speakers*, 661 F.3d at 1175.  For

example, the test set forth in *Columbia Insurance Co.* requires a plaintiff to, *inter alia*, "establish

to the Court's satisfaction that [its] suit against [a] defendant could withstand a motion to dismiss .

. . to prevent abuse of this extraordinary application of the discovery process." 185 F.R.D. at 579.

Courts have also applied the "good cause" standard set forth in *Semitool, Inc. v. Tokyo Electron*

*Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002), evaluating whether "the need for expedited

discovery, in consideration of the administration of justice, outweighs the prejudice of the

responding party." *See, e.g., Camargo v. Miltiadous*, No. 14-CV-04490-JSC, 2015 WL 1951799,

at *2-5 (N.D. Cal. Apr. 29, 2015) (applying *Semitool*'s good cause standard and *Columbia Ins. Co.*

factors in evaluating request to serve early discovery to obtain identifying information about

pseudonymous online posters).

Some courts have applied a more rigorous standard, concluding that "[t]he standards that

inform Rule 8 and Rule 12(b)(6) offer too little protection to the defendant's competing interests,"

which include "the right to express most effectively and anonymously, without fear of expensive

adverse consequences, [the defendant's] views about matters in which many other members of the

public are interested." *Highfields*, 385 F. Supp. 2d at 974-75.  Under the *Highfields* standard, a

"plaintiff must adduce *competent evidence*—and the evidence plaintiff adduces must address *all* of

the inferences of fact that plaintiff would need to prove in order to prevail under at least one of the

causes of action plaintiff asserts.  *Id*. at 975-76 (noting that "[t]he court may not enforce the

subpoena if, under plaintiff's showing, any *essential* fact or finding lacks the requisite evidentiary

support.").  If the plaintiff meets its initial burden, the court must then "assess and compare the

magnitude of the harms that would be caused to the competing interests by a ruling in favor of

plaintiff and by a ruling in favor of defendant."  *Id*. at 976; *see, e.g., Art of Living Found.*, 2011

WL 5444622, at *5-7 (concluding *Highfields* standard applied to motion to quash subpoena for

pseudonymous bloggers who disparaged international educational and humanitarian organization).

The "most exacting standard" is that established by the Delaware Supreme Court in *Doe v. Cahill*,

884 A.2d 451 (Del. 2005).  *See In re Anonymous Online Speakers*, 661 F.3d at 1176 (discussing

various standards).  Under *Cahill*, a plaintiff must satisfy a hypothetical motion for summary

1    judgment and must "undertake efforts to notify the anonymous [speaker] that he is the subject of a

2    subpoena or application for order of disclosure."  884 A.2d at 460-61.

3           In choosing the proper standard "by which to balance the rights of anonymous speakers,"

4    the Ninth Circuit has suggested that courts focus on "the nature of the speech" conducted by the

5    defendant.  *In re Anonymous Online Speakers*, 661 F.3d at 1177.  A more rigorous standard may

6    be applicable where the speech at issue is political, religious, or literary, while commercial speech

7    "should be afforded less protection."  *See id*.  "The specific circumstances surrounding the speech

8    serve to give context to the balancing exercise."  *Id*.

9           Here, the challenged speech is anonymous criticism of Kechara House, a non-profit

10   Buddhist association.  This case is similar to *Art of Living Foundation*, in which the plaintiff

11   challenged pseudonymous statements on blogs about an "international 'educational and

12   humanitarian' organization dedicated to teaching the spiritual lessons of 'His Holiness Ravi

13   Shankar,'" as well as statements about Shankar himself, that were "obviously critical" and

14   appeared on blogs filled "with heated discussion and criticism."  2011 WL 5444622, at*1, 6.  The

15   challenged speech included statements that the Art of Living Foundation "is basically a cult and a

16   sham" and that Shankar was "a charlatan."  *Id*. at *6; *Art of Living Found. v. Does 1-10*, No. 10-

17   CV-05022-LHK, 2011 WL 2441898, at *2 (N.D. Cal. June 15, 2011) (granting motion to dismiss

18   defamation claim) ("*Art of Living Found. I*").  The court found that the speech at issue had First

19   Amendment value and was speech "on a public issue," and that even if the speech "[was] not

20   'political' or 'religious,' . . . it at least raise[d] significant constitutional issues."  *Art of Living

21   Found.*, 2011 WL 5444622, at *6.  Therefore, the court concluded that the *Highfields* standard was

22   the appropriate test to apply in evaluating the anonymous defendant's motion to quash a subpoena

23   intended to discover his identity.  *Id*. at *7.

24          As in *Art of Living Foundation*, Plaintiff challenges anonymous online speech disparaging

25   a spiritual organization.  The court finds that the *Highfields* test should apply to evaluating

26   Plaintiff's request for early discovery.  *See id*. (concluding that the *Highfields* test "is more likely .

27   . . to focus the Court on striking the proper balance between competing interests").

28   **B.      Analysis**

United States District Court
Northern District of California

As noted, the first part of the *Highfields* test requires a plaintiff to produce "competent evidence" of each fact that is "essential" to at least one of its causes of action. *Highfields*, 385 F. Supp. at 975-76. "It is not enough for a plaintiff simply to plead and pray. Allegation and speculation are insufficient." *Id*. at 975.

Here, the court finds that Plaintiff has not shown a "real evidentiary basis" for its defamation claim against the Doe Defendants. It submits no evidence whatsoever to support its claims, instead relying solely on the allegations in the amended complaint. In fact, as pleaded, Plaintiff's amended complaint could not satisfy the lower standard articulated in *Columbia Insurance Co.,* which requires the ability to withstand a motion to dismiss.

Plaintiff alleges that the Doe Defendants use the three blogs to intentionally disparage and defame Kechara House and its representatives, including Tsem Rinpoche, its spiritual leader. The elements of a defamation claim are "(a) a publication that is (b) false, (c) defamatory, and (d) unprivileged, and that (e) has a natural tendency to injure or that causes special damage." *Taus v. Loftus*, 40 Cal. 4th 683, 720 (2007). Libel is written defamation. It is "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45.

As a preliminary matter, "[p]laintiffs who sue for defamation must show that the allegedly libelous statements were made 'of and concerning' them, i.e., referred to them personally." *Barger v. Playboy Enters., Inc*., 564 F. Supp. 1151, 1153 (N.D. Cal. 1983); *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1042 (1986). "When [a challenged statement] names specific individuals, this is easily done." *Barger*, 564 F. Supp. at 1153. Here, Plaintiff challenges a number of statements allegedly about Tsem Rinpoche, as well as quotations "falsely" attributed to Tsem Rinpoche and cartoon depictions of him. (*See* Am. Compl. ¶¶ 18, 20, 24.) Plaintiff also submits evidence in support of its application for early discovery that one post on *Goodbye Shugden* claims that "Tsem Rinpoche (or 'Tom') . . . made the author 'quit [her] job,' would randomly slap people, 'grab their hair and drag them', and claimed he was a psychic." (Gomez Decl. ¶ 10.) To the extent that Tsem Rinpoche could establish that the statements and depictions

7

are about and of Tsem Rinpoche, he would certainly be able to argue that they are "of and concerning" him, since they reference him specifically.[2]  *See, e.g., Art of Living Found. I*, 2011 WL 2441898, at *6 (noting that founder of organization "would have a good argument that Defendants' statements are 'of and concerning' him because the statements expressly mention his name numerous times.").  However, Tsem Rinpoche is not a party to this litigation.  Since Plaintiff Kechara House has not sufficiently established that allegedly defamatory statements about or depictions of Tsem Rinpoche are "of and concerning" Kechara House itself, such statements would not be actionable by Kechara House.  *See Music Grp. Macao Commercial Offshore Ltd. v. Does*, 82 F. Supp. 3d 979, 985 (N.D. Cal. 2015) (holding that plaintiff corporation "can pursue only comments that are made about, or implicate, the company itself—and not those about its CEO, who is not a party to this suit" (citing *Steam Press Holdings, Inc. v. Hawaii Teamsters & Allied Workers Union, Local 996*, 302 F.3d 998, 1004 (9th Cir. 2002) ("The First Amendment . . . requires that the challenged statement be 'of and concerning' the complainant.")).

As to the allegedly defamatory statements about Kechara House itself, Plaintiff's amended complaint sets forth the statements made on the blogs in unspecific, general terms.  This is inadequate.  First, the Ninth Circuit has held that where a plaintiff challenges "conduct which is prima facie protected by the First Amendment, the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required."  *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Bd. of Culinary Workers*, 542 F.2d 1076, 1082-83 (9th Cir. 1976).  Further, some California courts have held that "the words constituting an alleged libel must be specifically identified, if not pleaded verbatim, in the complaint."  *Kahn v. Bower*, 232 Cal. App. 3d 1599, 1612 n.5 (1991); *des Granges v. Crall*, 27 Cal. App. 313, 314-15 (1915) (requiring exact pleading of words of libel; "[t]he words must be set out in the complaint that the defendant may have notice of the particular

---

[2] The court notes that it appears that the blog posts do not actually identify Tsem Rinpoche, instead referring to a figure named "Tom Tulku" or "Tsem Tulku."  (Am. Compl. ¶ 19 n.1.)  Accordingly, to be actionable, Tsem Rinpoche would need to establish that the statements refer to him "by reasonable implication."  *See SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 959 (9th Cir. 2008).

charge which he is required to answer.").[3]

Here, Plaintiff did not attach any of the allegedly defamatory materials to the amended complaint. It makes only the following allegations about the statements regarding Kechara House: *Inside the Company* "mischaracterizes a non-profit religious organization as a cult," and "falsely . . . associates Kechara House with hate groups." (Am. Compl. ¶ 16.) *Delightful Satire* "falsely claim[s]" that Kechara House "use[s] hate speech." (Am. Compl. ¶ 18.) *Goodbye Shugden* describes Kechara House as a cult and "falsely characterizes" Kechara House as "an abusive and sadistic organization." (Am. Compl. ¶¶ 19, 20.) These allegations are insufficient as a matter of law, since they are so general that the court can only speculate about the actual words that constitute the alleged defamatory statements.[4] *See, e.g., Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216-17 (C.D. Cal. 2004) (dismissing defamation claim where plaintiff failed to "identify and state the substance of the allegedly defamatory statement"); *Chabra v. S Monterey Cty. Mem'l Hosp.*, No. C 94-20335 EAI, 1994 WL 564566, at *7 (N.D. Cal. Oct. 3, 1994) (dismissing defamation claim for failing to specifically identify words constituting libel or slander). Similarly, Plaintiff alleges that Doe 3 wrote in an email that Kechara House tortures its members, (Am. Compl. ¶ 24), but does not set forth the specifics of this statement and does not attach the email to the amended complaint.

Without more information, including the actual alleged defamatory statements, the court is unable to determine whether the statements are assertions of fact, and thus actionable, or whether they are expressions of opinion about a religious organization that are protected by the First Amendment. Statements which are "pure" opinions, meaning "those that do not imply facts

---

[3] In contrast, the California Supreme Court has held that "slander can be charged by alleging the substance of the defamatory statement," and that an allegation of slander is not "defective for failure to state the exact words of the alleged slander." *Okun v. Superior Court*, 29 Cal. 3d 442, 458 (1981).

[4] In a declaration in support of the application for early discovery, Steven L. Gomez, a consultant and investigator retained by Plaintiff, describes with more particularity some of the challenged statements. (Gomez Decl. ¶¶ 5, 10.) However, most of these statements are about Tsem Rinpoche or "the chairman," who is not identified. Gomez's descriptions of the statements regarding Plaintiff are set forth in general, non-specific terms; e.g., "describing Kechara House as a 'cult' and ascribing 'violence' to Kechara House" (¶ 5), "[t]he post . . . implies that 'Shugden Groups' have been responsible for 'violent murders'" (¶ 8), and "Kechara House . . . is a cult and its members are 'two-faced liars and psychopaths.'" (¶ 10.)

capable of being proved true or false," are protected by the First Amendment. *Partington v. Bugliosi*, 56 F.3d 1147, 1153 n.10 (9th Cir. 1995) (citation omitted). In contrast, assertions of fact and statements that "may . . . imply a false assertion of fact" are actionable. *Id*. at 1153 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19 (1990)). Whether a statement is an assertion of fact or opinion is a question of law. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1193 (9th Cir. 1989). To determine whether a statement implies an assertion of fact, courts in the Ninth Circuit examine the "totality of circumstances in which it was made," *Underwager v. Channel 9 Austl.*, 69 F.3d 361, 366 (9th Cir. 1995), and apply the following three-part test:

> First, a court reviews the statement in its "broad context," which includes the general tenor of the entire work, the subject of the statement, the setting, and the format of the work. Next, the court turns to the "specific context" and figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation. Finally, the court inquires whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

*Art of Living Found. I*, 2011 WL 2441898, at *5 (citing *Underwager*, 69 F.3d at 366).

As described above, Plaintiff sets forth the substance of the allegedly defamatory statements only in general terms, devoid of context. This renders it impossible to assess the statements under the Ninth Circuit's three-part, fact-intensive test to determine whether they imply assertions of fact or are constitutionally protected expressions of opinion. *See Art of Living Found. I*, 2011 WL 2441898, at *7-9 (dismissing defamation claim based on, *inter alia*, conclusion that in context, allegedly defamatory statements on blogs were constitutionally protected opinions). Although the court is unable to make this determination based on the allegations in the amended complaint (or the evidence submitted in support of Plaintiff's application), certain points relevant to the viability of Plaintiff's defamation claim bear noting. Once again, context matters. "[S]tatements made as part of an acknowledged heated debate often negate the impression that the defendant was asserting an objective fact." *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1223 (D. Or. 2011); *Art of Living Found. I*, 2011 WL 2441898, at *7 (finding readers less likely to view statements on "obviously critical blogs" "as assertions of fact rather than opinion"). Moreover, while online speech generally "stands on the same footing as other speech, blogs are a subspecies of online speech which inherently suggest that statements

made there are not likely provable assertions of fact." *Obsidian Fin. Grp., LLC*, 812 F. Supp. 2d at 1223-24 (citations omitted).[5]

For these reasons, the court finds that Plaintiff has failed to show that there is a "real evidentiary basis" for its defamation claim against the Doe Defendants, since the amended complaint could not even withstand a motion to dismiss. Therefore, the court need not reach the second part of the *Highfields* test, comparing "the magnitude of the harms that would be caused to the [Plaintiff's and Defendants'] competing interests by a ruling in favor of" each party. *Highfields*, 385 F. Supp. 2d at 976. Accordingly, Plaintiff's application for early discovery is denied.

### IV. Conclusion

For the foregoing reasons, Plaintiff's ex parte application for an order granting leave to take early discovery is denied.

**IT IS SO ORDERED.**

Dated: September 18, 2015



United States Magistrate Judge
Judge Donna M. Ryu

---

[5] As to the "cartoon-like" depictions of Tsem Rinpoche, one court has noted that "[a]lthough cartoons are not exempt from the law of defamation, it is important to consider the immediate context in which the statement was made. Cartoons are traditionally grounded in exaggeration and imagination, as opposed to fact." *Dworkin v. Hustler Magazine, Inc.*, 668 F. Supp. 1408, 1415 (C.D. Cal. 1987) (citations omitted).

<div style="writing-mode: vertical-lr">United States District Court
Northern District of California</div>